IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 20-4441

———————————

UNITED STATES OF AMERICA,

*Appellant,*

v.

ALI AL-TIMIMI,

*Appellee.*

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Leonie M. Brinkema, District Judge*

———————————

MEMORANDUM BRIEF OF THE UNITED STATES
IN SUPPORT OF BAIL APPEAL

———————————

G. Zachary Terwilliger
United States Attorney

Daniel T. Young
Assistant United States Attorney

Gordon M. Kromberg
John T. Gibbs
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

# Table of Contents

Table of Authorities ......................................................................................... ii

Introduction and Summary of Argument ................................................................. 1

Jurisdictional Statement ................................................................................. 2

Statement of the Case .................................................................................... 2

    A.    A jury convicts the defendant of soliciting treason against the United States ............................................................................................ 2

    B.    The district court sentences the defendant to life imprisonment plus 30 years on Counts 7–10. ......................................................... 5

    C.    Rather than perfecting his appeal, the defendant seeks multiple remands to the district court. .......................................................... 5

    D.    The defendant moves for bail pending appeal. .................................. 6

    E.    The district court grants the defendant's bail motion and imposes a 14-day quarantine period. .................................................. 8

Argument .................................................................................................. 9

    I.    The defendant has not met his burden to show he is not a danger by clear and convincing evidence. ......................................................... 10

    II.    The defendant has not presented a substantial question of law or fact sufficient to justify bail pending appeal. ........................................ 14

    III.    The district court erred in concluding that exceptional reasons exist for granting bail. ....................................................................... 19

Conclusion .............................................................................................. 23

Certificate of Compliance ............................................................................. 24

## Cases

*Hassoun v. Searls*, 968 F.3d 190, 2020 WL 4355275
    (2d Cir. July 30, 2020) ..................................................................13

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......................11

*In re Charge to Grand Jury*, 30 F. Cas. 1034 (S.D.N.Y. 1861) ..............11

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ....................................1

*Rosemond v. United States*, 572 U.S. 65 (2014) .................................2, 8

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008) .........................11

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) ......................10

*United States v. Al-Timimi*, No. 1:04-cr-385 (LMB),
    2020 WL 4810120 (E.D. Va. Aug. 18, 2020) ..................................... passim

*United States v. Benkhala*, 530 F.3d 300 (4th Cir. 2008) ......................11

*United States v. Benson*, 957 F.3d 218 (4th Cir. 2020) .........................17

*United States v. Brady*, No. 18-cr-316 (PAC),
    2020 WL 2512100 (S.D.N.Y. May 15, 2020) ...............................21

*United States v. Brown*, 368 F.3d 992 (8th Cir. 2004) ...........................19

*United States v. Chandia*, 514 F.3d 365 (4th Cir. 2008) ................... 4, 11

*United States v. Dahda*, No. 20-3097, 2020 WL 4578381
    (10th Cir. Aug. 10, 2020) (per curiam) ........................................12

*United States v. Davis*, 139 S. Ct. 2319 (2019) .......................................1

*United States v. Dietz*, No. 94-5733, 1995 WL 133353
    (4th Cir. Mar. 28, 1995) (per curiam)..........................................14

*United States v. DiSomma*, 951 F.2d 494 (2d Cir. 1991) .......................19

*United States v. Donel*, 211 F. App'x 180 (4th Cir. 2006) (per curiam) .................17

*United States v. Duncan*, — F. Supp. 3d —, 2020 WL 1700355
    (D. Kan. Apr. 8, 2020) ..................................................................21

*United States v. Ebersole*, 411 F.3d 517 (4th Cir. 2005)........................15

*United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003)..........................................19

*United States v. Garcia*, 752 F.3d 382 (4th Cir. 2014)............................................15

*United States v. Grobman*, — F. Supp. 3d —, 2020 WL 3286309
    (S.D. Fla. Apr. 24, 2020) ....................................................................22

*United States v. Hamidullin*, 888 F.3d 62 (4th Cir. 2018)......................................14

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ..........................................15

*United States v. Khan*, 309 F. Supp. 2d 789 (E.D. Va. 2004) ................................11

*United States v. Lawson*, 810 F.3d 1032 (7th Cir. 2016)........................................16

*United States v. McGowan*, No. 20-1617, 2020 WL 3867515
    (6th Cir. July 8, 2020).......................................................................22

*United States v. Meskini*, 319 F.3d 88 (2d Cir. 2003) ............................................13

*United States v. Millender*, — F.3d —, 2020 WL 4745571
    (4th Cir. Aug. 17, 2020) ...................................................................18

*United States v. Miselis*, — F.3d —, 2020 WL 5015072
    (4th Cir. Aug. 24, 2020) ...................................................................18

*United States v. Muhtorov*, 702 F. App'x 694 (10th Cir. 2017)..............................13

*United States v. Mullet*, No. 13-3205, 2013 WL 8367565
    (6th Cir. July 24, 2013).....................................................................11

*United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990) ..........................................20

*United States v. Oloyede*, 933 F.3d 302 (4th Cir. 2019)..........................................15

*United States v. Prado*, 815 F.3d 93 (2d Cir. 2016) ................................................16

*United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999)..............................................18

*United States v. Raia*, 954 F.3d 594 (3d Cir. 2020)..................................................20

*United States v. Roeder*, 807 F. App'x 157 (3d Cir. 2020) .....................................22

*United States v. Spinney*, 65 F.3d 231 (1st Cir. 1995)..............................................17

*United States v. Steinhorn*, 927 F.2d 195 (4th Cir. 1991) (per curiam) .................14

*United States v. Stewart*, 19 F. App'x 46 (4th Cir. 2001) (per curiam)...................19

*United States v. Strong*, 775 F.2d 504 (3d Cir. 1985) ..............................................11

*United States v. Williams*, 553 U.S. 285 (2008) ......................................................18

*United States v. Williams*, 753 F.2d 329 (4th Cir. 1985)........................................10

*United States v. Young*, 916 F.3d 368 (4th Cir. 2019)............................................12

*United States v. Zimny*, 857 F.3d 97 (1st Cir. 2017) ............................................14

## Statutes

18 U.S.C. § 2(a) .............................................................................................15

18 U.S.C. § 2381 .............................................................................................3

18 U.S.C. § 2384 .............................................................................................3

18 U.S.C. § 3142(f)(1)(B) ...............................................................................9

18 U.S.C. § 3143(b)(1)(A) ........................................................................ 2, 10

18 U.S.C. § 3143(b)(1)(B) ...............................................................................2

18 U.S.C. § 3143(b)(1)(B)(iii) ................................................................ 10, 14

18 U.S.C. § 3143(b)(2).....................................................................................9

18 U.S.C. § 3145(c) ................................................................... 1, 2, 10, 19

18 U.S.C. § 373 ...............................................................................................3

18 U.S.C. § 3731 .............................................................................................2

18 U.S.C. § 844(h) .........................................................................................15

18 U.S.C. § 844(h)(2)......................................................................................3

18 U.S.C. § 924(c) ..........................................................................................3

18 U.S.C. § 924(o) ..........................................................................................3

18 U.S.C. § 960 ...............................................................................................3

28 U.S.C. § 1291 .............................................................................................2

50 U.S.C. § 1705 .............................................................................................3

## Other Authorities

Ctrs. for Disease Control, *People with Certain Medical Conditions*,
Aug. 14, 2020, https://www.cdc.gov/coronavirus/2019-
ncov/need-extra-precautions/people-with-medical-
conditions.html ...........................................................................................20

Gov't of the District of Columbia, *Coronavirus Data*, Aug. 25, 2020,
   https://coronavirus.dc.gov/page/coronavirus-data.........................................21

Voice of America, *Bosnia to Pakistan to Prison:  Ex-Fighter Reflects
   on Life*, Apr. 20, 2017, https://www.voanews.com/usa/bosnia-
   pakistan-prison-ex-fighter-reflects-life.........................................................13

**Rules**

Fed. R. Crim. P. 46(c) ..............................................................................10

## Introduction and Summary of Argument

The defendant, Ali Al-Timimi, is serving a sentence of life imprisonment plus 30 years.  An influential religious figure in northern Virginia, after September 11, 2001, he encouraged several of his followers to visit terrorist training camps in Pakistan so they could wage war against American forces in Afghanistan.  Some succeeded in traveling to the camps, where they trained with firearms and explosives.  In 2005, a jury convicted Al-Timimi of ten counts, including soliciting treason.

Despite lodging a direct appeal in 2005, Al-Timimi has not perfected it.  Instead, he has repeatedly sought remands to litigate alleged discovery violations and claims under *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019).  These remands have continued for nearly 15 years.

In April 2020, Al-Timimi moved for bail pending appeal, arguing that his health characteristics place him at high risk if he contracts the novel coronavirus such that an "exceptional reason" for bail exists under 18 U.S.C. § 3145(c).  The district court granted the motion and ordered Al-Timimi's release from the maximum-security facility at ADX Florence.  *United States v. Al-Timimi*, 2020 WL 4810120 (E.D. Va. Aug. 18, 2020).

The district court erred.  It found that Al-Timimi had proven by clear and

1

convincing evidence that he is not dangerous, as required by 18 U.S.C. § 3143(b)(1)(A), notwithstanding that he has never forsworn violent jihad as a legitimate tactic. It determined that Al-Timimi's appeal will present a substantial question of law or fact, as required by § 3143(b)(1)(B), under *Rosemond v. United States*, 572 U.S. 65 (2014), even though its jury instructions complied with *Rosemond*. And it held that there were exceptional reasons for bail in light of the pandemic, despite the absence of confirmed cases of COVID-19 among staff or prisoners at ADX Florence and even though the defendant proposes to be released to Washington, DC, where exposure to the virus is likelier.

The Court should therefore vacate the district court's order granting bail pending appeal.

## Jurisdictional Statement

Under 18 U.S.C. § 3145(c), bail orders are appealable pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3731. The district court entered its bail order on August 18, 2020 (JA1710–11), and the government timely appealed (JA1712–13).

## Statement of the Case

### A.   A jury convicts the defendant of soliciting treason against the United States.

After the defendant's arrest in 2004, the government consented to release with conditions and he was released on bond. JA5. A grand jury returned a superseding indictment in February 2005 (JA41–56), charging ten counts:

2

- Inducing a conspiracy to use, carry, possess, and discharge firearms in relation to crimes of violence, in violation of 18 U.S.C. §§ 2 and 924(n) (Count 1);[1]

- Soliciting treason, in violation of 18 U.S.C. §§ 373 and 2381 (Count 2);

- Inducing a seditious conspiracy, in violation of 18 U.S.C. §§ 2 and 2384 (Count 3);

- Attempting to support the Taliban, in violation of 50 U.S.C. § 1705 (Count 4);

- Inducing others to aid the Taliban, in violation of 18 U.S.C. § 2 and 50 U.S.C. § 1705 (Count 5);

- Inducing a conspiracy to violate the Neutrality Act, in violation of 18 U.S.C. §§ 2, 371, and 960 (Count 6);

- Inducing others to discharge firearms during and in relation to crimes of violence, in violation of 18 U.S.C. §§ 2 and 924(c) (Counts 7–8); and

- Inducing others to carry explosives during the commission of federal felonies, in violation of 18 U.S.C. §§ 2 and 844(h)(2) (Counts 9–10).

The superseding indictment explained that Al-Timimi was a lecturer at the

Dar al Arqam Islamic Center in Falls Church, Virginia. JA44 ¶ 10. On

September 16, 2001, he met with others at the home of Yong Kwon in Fairfax,

Virginia, and encouraged them to visit training camps run by Lashkar-e-Taiba

(LET) in Pakistan to garner training to fight American soldiers alongside the

---

[1] The citation to § 924(n) in the superseding indictment is a typographical error. The correct code section is 18 U.S.C. § 924(o).

Taliban.[2]  More specifically, the defendant:

- "[T]old [others] that the time had come for them to go abroad to join the mujahideen engaged in violent jihad in Afghanistan";

- "[T]old his listeners that American troops likely to arrive in Afghanistan would be legitimate targets of the violent jihad in which his listeners had a duty to engage";

- "[T]old the gathered individuals considering whether to obtain military-style training from [LET] in Pakistan that the organization was on the correct path" and

- "[T]old told the conspirators that what he said at the meeting must be kept secret."

JA45–46 ¶¶ 2–6.  Counts 7 and 9 related to offenses committed by Yong Kwon at an LET camp in October 2001.  Counts 8 and 10 related to offenses committed by Khwaja Hasan at an LET camp in November 2001.[3]

Trial began on April 4, 2005.  The jury returned across-the-board guilty verdicts.  The government moved to detain the defendant pending sentencing, and the district court denied the motion.  JA14.

---

[2] "[T]he United States government designated [LET] as a foreign terrorist organization (FTO) in December 2001."  *United States v. Chandia*, 514 F.3d 365, 369 (4th Cir. 2008).

[3] Because Counts 9–10, and Kwon's and Hasan's underlying conduct, is central to the government's arguments on appeal, *see infra* Part II, their testimony appears in its entirety in the Joint Appendix.  JA57–842 (Kwon); JA1110–1295 (Hasan).

## B. The district court sentences the defendant to life imprisonment plus 30 years on Counts 7–10.

On July 13, 2005, the district court imposed concurrent sentences between 60 and 121 months on Counts 1–6, a sentence of 360 months on the first § 924(c) count, a sentence of life imprisonment on the second § 924(c) count, and a combined consecutive sentence of 30 years on the two § 844(h) counts.  JA1389.  The life sentence and consecutive 30-year sentences were mandatory minimums.

At sentencing, the defendant moved for bail pending appeal.  The district court denied the motion.  JA16.

The defendant has discharged all sentences except those on Counts 7–10.  He has been incarcerated since July 13, 2005, but, even setting aside his two § 924(c) convictions, he has a total sentence of 481 months.  JA1389.  Assuming the maximum of 15 percent off for good-time credit, that sentence would be active until approximately July 13, 2039.

## C. Rather than perfecting his appeal, the defendant seeks multiple remands to the district court.

The defendant filed his direct appeal on July 15, 2005.  JA16.  On April 25, 2006, the Court granted his motion to remand the case to litigate purported discovery violations.  JA1390–92.  In April 2014, the district court denied relief.  JA29–30.  The defendant filed a new appeal, opened as No. 14-4451.

The defendant again moved for a remand.  (No. 14-4451, ECF No. 51.)  His

new request related to defense counsel's assertion that, within the National Archives, he had discovered a new document revealing never-disclosed information.  The government opposed remand, arguing that the document was not discoverable.  (No. 14-4451, ECF Nos. 53, 56-2.)  In August 2015, the Court remanded the case.  JA1393–94.  The district court has not, to date, addressed these allegations.[4]

In July 2016, the Court enlarged the scope of its remand to permit the defendant to raise arguments under *Johnson* to attack his § 924(c) convictions.  JA1395–96.  The defendant later moved to vacate his convictions on Count 1, 7, and 8.  The government opposed those motions, on which the district court has not yet ruled.  JA34–36.

### D.  The defendant moves for bail pending appeal.

The defendant moved for bail pending appeal in April 2020.  JA1397–1439.  The government opposed on the grounds that (i) the defendant had not demonstrated a substantial question of law or fact as to his § 924(c) and § 844(h) convictions, (ii) his health characteristics did not place him in a high-risk category regarding COVID-19, and (iii) he could not show that exceptional reasons existed

---

[4] In a pleading filed in November 2015, the government represented that it had provided the documents related to the second remand to the district court as early as 2007, well before the district court rejected the allegations supporting the first remand.  (Dist. Ct. ECF No. 420 at 2.)

for bail.  JA1440–67.

During a telephonic conference in June (JA1584–1604), the district court recognized that the absence of COVID-19 cases at the maximum-security ADX Unit within FCC Florence counseled against bail (JA1587–88).  Even so, it announced that, in its view, the equities favored bail given that the defendant was the last member of his clique serving prison time for his conduct after September 11.  JA1591–92.

Fearing that a bail grant was imminent, and wanting to make certain that the district court had a full record, the government requested permission to submit additional information probative on the issue of dangerousness.  The district court agreed, and the government filed a supplemental under-seal pleading detailing certain sensitive information dating from 2010.  JA1738–87.  The defendant filed a series of public and under-seal pleadings in response.  JA1648–58, 1788–1862.  On July 13, 2020, the government withdrew its reliance on the 2010 allegations (JA1659–63), but reiterated its argument, based on the nature and severity of the defendant's offenses, that he had not sufficiently proven his non-dangerousness (JA1661).

Litigation continued.  The government filed a declaration from a physician at FCC Florence acknowledging that, under the CDCs' most up-to-date guidance, the defendant faced a heightened risk of complications from COVID-19.  JA1863–

73. The government also proffered that five FCC Florence prison guards had tested positive for COVID-19, although none worked at the ADX facility. JA1667–68 ¶ 4, 1681–85, 1691–93.[5]

### E. The district court grants the defendant's bail motion and imposes a 14-day quarantine period.

The district court granted bail on August 18, 2020. JA1694–1709 (redacted opinion); JA1874–89 (unredacted opinion). In doing so, it reached three key holdings.

*First*, it held that Al-Timimi had proven his non-dangerousness, emphasizing his adherence to court orders and his minor disciplinary record while incarcerated. *Al-Timimi*, 2020 WL 4810120, at *3.

*Second*, it held that the defendant had presented a substantial legal question regarding his § 924(c) and § 844(h) convictions, because those convictions could be subject to *vacatur* on an aiding-and-abetting theory under *Rosemond v. United States*, 72 U.S. 65 (2014). *Id.* at *4–5.

*Third*, it held that there were two "exceptional reasons" for bail: the current pandemic and this case's unusual procedural posture. *Id.* at *6–7. As to the

---

[5] The government now understands that, as of August 25, 2020, a total of eight staffers at FCC Florence have contracted COVID-19 and recovered. There are still no instances of COVID-19 among staffers or prisoners at the ADX facility. Seven prisoners at the medium-security FCI facility recently tested positive, having arrived at FCC Florence from elsewhere, and are now in quarantine.

pandemic, the district court stated that Al-Timimi faced a heightened "risk of severe illness from COVID-19." *Id.* at \*6.  In a footnote, the district court recognized that there have been no cases of COVID-19 at ADX Florence, but stated that courts "need not wait until COVID-19 is present" before granting release. *Id.* at \*6 n.5.  As to procedural posture, the district court expressed concern that if this Court were to invalidate the defendant's convictions on Counts 9–10, the defendant would have over-served his sentence. *Id.* at \*7.  The district court also underscored that an "exceptional reasons" holding was only necessary in light of the defendant's two convictions under 18 U.S.C. § 924(c), which it previewed it was likely to vacate under *Davis*. *Id.*

The district court also imposed a 14-day quarantine period, such that the Bureau of Prisons intends to release the defendant on Tuesday, September 1, 2020. The district court directed that the defendant is to reside at his mother's house in Washington, DC while on bail, subject to GPS monitoring, home confinement, and monitoring of electronic devices.  JA1710–11.

This appeal followed.

## Argument

Under the Bail Reform Act, the defendant is subject to mandatory detention post-verdict under 18 U.S.C. § 3143(b)(2) due to his conviction for an offense punishable by life imprisonment under § 3142(f)(1)(B).  Accordingly, to obtain

bail, he must clear three hurdles. He must establish his non-dangerousness by clear and convincing evidence under § 3143(b)(1)(A); demonstrate a substantial question of law or fact likely to result in a non-incarceration sentence under § 3143(b)(1)(B)(iii); and establish that "exceptional reasons" exist under § 3145(c).

Because the district court erred on all three fronts, this Court should vacate its bail order.

## I. The defendant has not met his burden to show he is not a danger by clear and convincing evidence.

When seeking bail pending appeal, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c). Under 18 U.S.C. § 3143(b)(1)(A), the defendant must demonstrate non-dangerousness by clear and convincing evidence. *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (the Bail Reform Act "establishes a presumption in favor of detention" post-verdict). This Court reviews a dangerousness finding for clear error. *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985). For two key reasons, the district court's finding here was clearly erroneous.

*First*, the district court improperly discounted the severity of Al-Timimi's offenses. As this Court recognized in *Williams*, "criminal records" may serve as compelling evidence of dangerousness. 753 F.3d at 335 (discussing prior drug-trafficking convictions as evidence of dangerousness); *see also United States v.*

*Strong*, 775 F.2d 504, 507–08 (3d Cir. 1985) (holding that a drug-trafficking

conviction was sufficient evidence of dangerousness to support detention).

The defendant sent his acolytes overseas to garner firearms and explosives

training so that they could wage violent jihad against American soldiers in

Afghanistan. Providing such support to America's enemies in a time of war is

profoundly serious conduct. *See Holder v. Humanitarian Law Project*, 561 U.S. 1,

28–29 (2010) (noting congressional findings regarding the "serious threat posed by

international terrorism" and stating that "combating terrorism is an urgent

objective of the highest order"); *In re Charge to Grand Jury*, 30 F. Cas. 1034, 1035

(S.D.N.Y. 1861) (noting that treason "is the highest crime known to society, and

was deemed by the founders of our government of such importance … that they

specially defined it in the constitution").

Indeed, because of the defendant's influence and position of authority,

several of his disciples did precisely what he instructed (or sought to further his

goals in other ways). *See United States v. Benkhala*, 530 F.3d 300 (4th Cir. 2008);

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008); *United States v. Chandia*,

514 F.3d 365 (4th Cir. 2008); *United States v. Khan*, 309 F. Supp. 2d 789 (E.D.

Va. 2004). That kind of sway over others illustrates the danger inherent in the

defendant's release. *Cf. United States v. Mullet*, 2013 WL 8367565, at *2 (6th Cir.

July 24, 2013) (holding that the defendant could not show non-dangerousness

where "[h]e [was] the leader and exercises control over the members of his community, as evidenced by the [criminal] actions of [his] fifteen other co-defendants"). To put a fine point on it, Nicholas Young, whose conviction this Court recently affirmed for attempting to provide material support to ISIS, *see United States v. Young*, 916 F.3d 368 (4th Cir. 2019), used to pray for Al-Timimi along with other extremists. *See* App'x Vol. III at 1332–33, No. 18-4138, ECF No. 24-3.

The district court disagreed with this analysis, stating that the government's concerns were "thoroughly unpersuasive." 2020 WL 4810120, at *3. Instead, it focused on the defendant's compliance with the conditions of his pretrial release and his minimal disciplinary record. But this approach inverts the governing legal standard and misallocates the burden of proof. Time in prison—even time without serious disciplinary infractions—is not itself clear and convincing evidence of non-dangerousness. *Cf. United States v. Dahda*, 2020 WL 4578381, at *3 (10th Cir. Aug. 10, 2020) (per curiam) (affirming denial of bail even where the defendant "served several years in prison with no significant disciplinary incidents").

The record also contains zero evidence that Al-Timimi has accepted responsibility for his misconduct or has forsworn violent jihad as a permissible tactic. This is in stark contrast to at least one of Al-Timimi's followers, Daniel Royer, who has publicly renounced Islamic extremism and criticized Al-Timimi's

"colossally bad advice." *See* Voice of America, *Bosnia to Pakistan to Prison: Ex-Fighter Reflects on Life*, Apr. 20, 2017, https://www.voanews.com/usa/bosnia-pakistan-prison-ex-fighter-reflects-life.

*Second*, the district court disregarded the recidivism challenges posed by commitment to violent jihad. In *Hassoun v. Searls*, 968 F.3d 190, 2020 WL 4355275 (2d Cir. July 30, 2020), for example, the Second Circuit stayed an order releasing a defendant who served 13 years in prison on terrorism charges. *Id.* at *2. In doing so, it underscored that "even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." *Id.* at *11 (quoting *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003)). *Hassoun*'s reasoning applies here. Just as Hassoun provided material support to terrorists, this defendant sought to provide trained fighters to the Taliban for the purpose of killing Americans overseas. *Cf. United States v. Muhtorov*, 702 F. App'x 694, 702 (10th Cir. 2017) (vacating grant of bail given the defendant's "alleged intent to further … terrorism and the concrete, affirmative steps that he took in manifesting his intent").

The district court disregarded *Hassoun*, asserting that Al-Timimi "was neither charged with nor convicted of any terrorism offenses." 2020 WL 4810120, at *3 n.3. But, here, that is a distinction without a difference. After September 11, the connection between supporting the Taliban against American soldiers and the

terroristic threat posed by violent jihad was manifest. *Cf. United States v. Hamidullin*, 888 F.3d 62, 78 (4th Cir. 2018) (Wilkinson, J., concurring) (noting that the Court's rejection of combatant immunity claims by a Taliban fighter was appropriate in light of the "worldwide scourge of terrorism").

Accordingly, the defendant has not overcome the presumption in favor of detention.

## II. The defendant has not presented a substantial question of law or fact sufficient to justify bail pending appeal.

The defendant also has not raised "a substantial question of law or fact" likely to result in a non-imprisonment sentence, as required under 18 U.S.C. § 3143(b)(1)(B)(iii). A "substantial question of law" is a "close" question or "one that very well could be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam). The defendant bears the burden on this issue. *See, e.g.*, *United States v. Zimny*, 857 F.3d 97, 100 (1st Cir. 2017); *accord United States v. Dietz*, 1995 WL 133353, at *4 (4th Cir. Mar. 28, 1995) (per curiam).

The government accepts for argument's sake that the defendant's two § 924(c) convictions, resulting in his life sentence, raise substantial questions under *Davis*. But his two convictions under § 844(h) subject him to an additional mandatory 30-year sentence that will not run until at least 2039. Those convictions rest on predicate offenses that are federal felonies, not crimes of violence. Thus, to

prevail, the defendant must demonstrate that his § 844(h) convictions are infirm under *both* of the government's alternative legal theories—that Al-Timimi was liable for actions undertaken in furtherance of the conspiracies he induced, or, alternatively, that he was liable under a straightforward aiding-and-abetting theory. If the defendant's aiding-and-abetting arguments fail, that is sufficient to defeat his bail motion. And here, the convictions on Counts 9–10 remain sound under a straightforward application of 18 U.S.C. § 2(a).

The jury instructions expressly required the jury to conclude—in keeping with *Rosemond*—that the defendant understood, in advance, that others were going to carry explosives in furtherance of federal felonies. The key instructions comprise multiple transcript pages and deploy a series of elaborate hypotheticals to underscore the importance of advance knowledge. JA1336–1343. On their face, these instructions satisfy *Rosemond* and cases applying it. *See United States v. Oloyede*, 933 F.3d 302, 317 (4th Cir. 2019); *United States v. Garcia*, 752 F.3d 382, 389 n.6 (4th Cir. 2014).

Moreover, because the defendant did not object to the instruction at trial, this Court would, at most, review any *Rosemond* claim for plain error. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 128 n.18 (4th Cir. 2014); *United States v. Ebersole*, 411 F.3d 517, 526 (4th Cir. 2005). The defendant's challenge would therefore fail, both because there was no *Rosemond* error and because any error, if

it occurred, did not affect his substantial rights. *See, e.g.*, *United States v. Prado*, 815 F.3d 93, 105 (2d Cir. 2016) (a *Rosemond* error did not affect a defendant's substantial rights where the court could not "say that there [was] a reasonable probability of a different outcome at trial had the jury been properly instructed"); *United States v. Lawson*, 810 F.3d 1032, 1041–42 (7th Cir. 2016) (same).

Here, any prejudice claim is weak. Yong Kwon, whose handling of explosives at the LET camps supported Count 9, testified that co-conspirator Randall Royer, in Al-Timimi's presence prior to September 11, 2001, described his experience at the LET camps. JA81–85, 112–120, 123. He also stated that Royer told him about traveling with LET fighters to fire explosive mortar shells on Indian positions. JA413–14. He further testified that Al-Timimi said during the September 16 meeting that those present "should join LET and get some training from the LET camps." JA185–87.

What's more, FBI Special Agent John Wyman testified that Al-Timimi stated that he "was well aware of [LET] tactics," JA928, including "cross-border shelling, raids on police stations and military camps," use of "guerilla tactics," and "the use of what he called fidayeen attacks, which are also referred to as suicide missions," JA932. At trial, the government also introduced Exhibit 10J11a—an article the defendant sent to his brother recounting one recruit's experience at the LET training camps, including his firing of a mounted grenade launcher. JA948–

16

49 (testimony); JA1296–1303 (exhibit).

Under *United States v. Benson*, 957 F.3d 218 (4th Cir. 2020), proof of advance knowledge under *Rosemond* need not rely on direct evidence, so long as, under a "deferential review of the jury's findings, [the Court] can conclude [that] a rational trier of fact could have concluded that this element of the crime had been proven beyond a reasonable doubt." *Id.* at 238. This is such a case. A rational jury could have concluded that by directing his followers to train at the LET camps in preparation to fight Americans, Al-Timimi understood in advance that those men would gain proficiency in LET's signature tactics—the use of automatic weapons and explosives.

The defendant's contrary arguments have been inapposite. He has repeatedly cited an unpublished Circuit opinion for the proposition that *Rosemond* requires that a defendant know to a "practical certainty" that weapons will be used during a contemplated offense. *United States v. Donel*, 211 F. App'x 180, 181 (4th Cir. 2006) (per curiam) (quoting *United States v. Spinney*, 65 F.3d 231, 237 (1st Cir. 1995)). But *Spinney* itself went on to explain "that a conviction can be grounded on something less than actual knowledge," such as evidence proving "that the defendant knew the salient details of the plot." 65 F.3d at 237. And here, the defendant understood—indeed, masterminded—the plot underlying this entire case: a scheme to send his acolytes abroad to LET training camps so they could

gain skills necessary to kill Americans.

The district court nevertheless concluded that the defendant's *Rosemond* claim was substantial because Al-Timimi "highlight[ed] competing evidence ... regarding [his] knowledge of the use of explosives at the LET camp." 2020 WL 4810120, at *5. But, absent any instructional error, the defendant makes only a sufficiency argument—and he cannot prevail by highlighting "competing evidence." Rather, he must show that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Millender*, — F.3d —, 2020 WL 4745571, at *3 (4th Cir. Aug. 17, 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). He has not done so.

Finally, the district court stated in a footnote that the government had not responded to the defendant's First Amendment arguments and his reliance on the alleged discovery violations underlying the remands. 2020 WL 4810120, at *5 n.4. The First Amendment claim is clearly without merit, as soliciting followers to commit treason by training to kill American troops is not protected speech. *United States v. Miselis*, — F.3d —, 2020 WL 5015072, at *10 n.9 (4th Cir. Aug. 24, 2020) (aiding and abetting criminal conduct is not protected speech); *United States v. Williams*, 553 U.S. 285, 298 (2008) (speech that is "intended to induce or commence illegal activities" is categorically unprotected); *United States v. Rahman*, 189 F.3d 88, 114 (2d Cir. 1999) (speech that "constitutes

an agreement to use force against the United States" is not protected).  Likewise, the district court has thus far rejected the defendant's discovery claims, so there is no reason to believe those claims are an exceptional reason for bail.

The defendant's substantial-question arguments lack merit.

## III.    The district court erred in concluding that exceptional reasons exist for granting bail.

Lastly, the defendant has not demonstrated exceptional reasons for bail under 18 U.S.C. § 3145(c).

This Court has not defined "exceptional reasons."  Other courts have adopted various formulations.  *See, e.g.*, *United States v. Brown*, 368 F.3d 992, 993 (8th Cir. 2004) (an "exceptional reason" must be something "clearly out of the ordinary, uncommon, or rare"); *United States v. Garcia*, 340 F.3d 1013, 1019 (9th Cir. 2003) (asking whether there are "any truly unusual factors or combination of factors"); *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991) (looking to "a unique combination of circumstances giving rise to situations that are out of the ordinary").

The Court also does not appear to have adopted a standard for reviewing post-verdict release orders under § 3145(c), although it has stated that "[t]he standard of review for pretrial detention orders under 18 U.S.C. § 3145(c) is one of independent review, with 'deference to the determination of the district court.'"  *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) (quoting

*United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir. 1990)).

However the Court chooses to define an "exceptional reason," the defendant has not presented one. The district court identified two such reasons—the pandemic and this case's unusual procedural posture. Even under a deferential standard of review, however, those reasons are not exceptional.

As to the pandemic, the government accepts that a defendant's health characteristics could constitute an "exceptional reason" in an appropriate case. Likewise, in light of the CDC's latest guidance, the government accepts that the defendant faces a heightened risk of complications from COVID-19.[6] But that fact, standing alone, is not exceptional.

*First*, any danger from COVID-19 at the maximum-security ADX facility is currently notional. To date, no inmates or staffers have tested positive for COVID-19 at ADX Florence, while eight staff members—stationed elsewhere in the complex apart from the ADX facility—have tested positive and recovered. As the Third Circuit has stated in an analogous context, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 596–97 (3d Cir. 2020). Likewise, the restrictive conditions of

---

[6] The CDC's revised guidance is available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

confinement at ADX Florence minimize the risk of an uncontrolled outbreak among prisoners there. JA1473–74 n.5, 1528.

Even if the risk of COVID-19 at ADX Florence were not hypothetical, the defendant's release plan makes him likelier to contract it. The defendant proposes to be released into Washington, DC. JA1430. But Washington, DC has identified 13,722 instances of coronavirus infection, leading to 605 deaths.[7] The district court recognized this at the bail hearing, telling defense counsel: "[Y]our client is actually in a safer environment vis-à-vis the virus than he would be if he was living in the District of Columbia." JA1587–88. Exactly so.

As one magistrate judge has concluded, when there are no cases of COVID-19 at a particular facility, "it would be speculative to say whether [a defendant's] release plan … truly mitigates [his] health risks rather than potentially exacerbating them." *United States v. Duncan*, — F. Supp. 3d —, 2020 WL 1700355, at *1 (D. Kan. Apr. 8, 2020); *see also United States v. Brady*, 2020 WL 2512100, at *4 (S.D.N.Y. May 15, 2020) (denying defendant's compassionate release motion, in part because his release plan would subject him to "the same, no less considerable risk of infection endured by the general public").

*Second*, the defendant's argument for exceptional reasons depends on

---

[7] *See* Gov't of the District of Columbia, *Coronavirus Data*, Aug. 25, 2020, https://coronavirus.dc.gov/page/coronavirus-data.

medical conditions that are fairly common. *Cf. United States v. Grobman*,

— F. Supp. 3d —, 2020 WL 3286309, at \*6 (S.D. Fla. Apr. 24, 2020) ("Virtually

every person over the age of 50 has some health condition that could conceivably

put that person at a greater risk of succumbing to the coronavirus, but this does not

entitle every inmate over 50 to be released.").  Likewise, his claim of non-

dangerousness depends on his lack of a disciplinary record while incarcerated.  But

if those two factors, standing alone, were sufficient to justify bail, then many of the

defendant's fellow inmates in maximum-security prison should be also be released

so long as they have not committed disciplinary infractions while imprisoned.

That cannot be correct.  *Cf. United States v. Roeder*, 807 F. App'x 157, 161 n.16

(3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the

result of this global pandemic does not, without more, provide the sole basis for

granting release to each and every prisoner within our Circuit."); *see also United

States v. McGowan*, 2020 WL 3867515, at \*4 (6th Cir. July 8, 2020) (staying a bail

order even where the defendant "suffer[ed] from several medical conditions that

may render him more vulnerable if he contracts COVID-19").

The district court's focus on the case's procedural posture is also

problematic.  It expressed concern that "[s]hould Al-Timimi succeed in having his

convictions under Counts 7, 8, 9, and 10 reversed, he would have already served

more time in prison than warranted."  2020 WL 4810120, at \*7.  But that is only

true because of the defendant's own choices. If he had *already* perfected his direct appeal, and if this Court had agreed with his arguments, he would have been a free man five years ago. The Court should not countenance a strategy whereby the defendant receives early release from prison by pointing to a legal theory he has been unwilling to defend before this Court on the merits.

## Conclusion

For the foregoing reasons, the Court should vacate the order granting the defendant bail pending appeal.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

/s/

Daniel T. Young
Gordon M. Kromberg
John T. Gibbs
Assistant United States Attorneys

## Certificate of Compliance

I certify that this motion response was written using 14-point Times New Roman typeface and Microsoft Word 2016. I further certify that this brief does not exceed 5,200 words, as required by Federal Rule of Appellate Procedure 27(d)(2)(A), and is more specifically 5,190 words. I understand that a material misrepresentation can result in the Court's striking the response and imposing sanctions.

/s/
_____

Daniel T. Young
Assistant United States Attorney
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
daniel.young@usdoj.gov