IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Appellant, | ) | |
| v. | ) | No. 20-4441 |
| ALI AL-TIMIMI, | ) | |
| Defendant-Appellee. | ) | |

**Government's Emergency Motion to Stay Defendant's Release on Bail**

In the days after September 11, 2001, the defendant, Ali Al-Timimi, solicited treason against the United States. He is now set to be released on bail from the maximum-security prison facility at ADX Florence on Tuesday, September 1, 2020, absent a stay from this Court.

In 2005, a jury convicted Al-Timimi of ten counts, including two counts under 18 U.S.C. §§ 924(c) and 2 (for inducing the use of firearms at a terrorist training camp) and two counts under 18 U.S.C. §§ 844(h) and 2 (for inducing the use of explosives at a terrorist training camp). Because of those convictions, Al-Timimi is now serving a sentence of life imprisonment plus 30 years. A full procedural history appears in the government's opening brief. (ECF No. 5 at 2–9.)

On August 18, 2020, following nearly 15 years of remand practice, the district court granted Al-Timimi's motion for bail pending appeal and imposed a

14-day quarantine period before his release from the maximum-security facility at ADX Florence in Colorado. *United States v. Al-Timimi*, No. 1:04-cr-385 (LMB), 2020 WL 4810120 (E.D. Va. Aug. 18, 2020). Accordingly, the Bureau of Prisons intends to release him on September 1.

Public safety considerations and the traditional stay factors counsel in favor of delaying Al-Timimi's release until this Court resolves the government's bail appeal, which will occur "promptly." *See* 18 U.S.C. § 3145(c); *accord* Fed. R. App. P. 9(a)(2). The government moved for a stay in the district court (Attachment 1), as is required. *See* Fed. R. App. P. 8(a)(1)(A). The defendant opposed (Attachment 2), the government replied only to notify the district court of the accelerated briefing schedule in this appeal (Attachment 3), and the district court denied relief (Attachment 4). The government has consulted with defense counsel, who oppose any motion for a stay.

**Argument in Favor of a Stay**

In *Hilton v. Braunskill*, 481 U.S. 770 (1987), the Supreme Court outlined four factors that govern a court's consideration of whether to grant a stay pending a prisoner's release from custody. These include:

1. Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

2. Whether the applicant will be irreparably injured absent a stay;

3. Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

4. Where the public interest lies.

*Id.* at 776 (punctuation modified).

These traditional stay factors apply in the context of bail litigation. *See Beverly v. United States*, 468 F.2d 732, 741 n.13 (5th Cir. 1972). These factors weigh in favor of staying the defendant's release.

## I. Likelihood of Success on the Merits

In *Hilton*, the Supreme Court explained that if the government "establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." 481 U.S. at 778.

Under the Bail Reform Act, the defendant is subject to mandatory detention post-verdict under 18 U.S.C. § 3143(b)(2) due to his conviction for an offense punishable by life imprisonment under § 3142(f)(1)(B). Accordingly, to obtain bail, he must clear three hurdles. He must establish his non-dangerousness by clear and convincing evidence under § 3143(b)(1)(A); demonstrate a substantial question of law or fact likely to result in a non-incarceration sentence under § 3143(b)(1)(B)(iii); and establish that "exceptional reasons" exist under § 3145(c).

3

Because it is unlikely that the defendant can satisfy any one of these requirements, much less all three, the government satisfies the requirements for a stay.

*First*, the defendant has not met his burden to demonstrate by clear and convincing evidence he is not a danger. Fed. R. Crim. P. 46(c); *see also* 18 U.S.C. § 3143(b)(1)(A). This Court reviews a dangerousness finding for clear error. *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985), and here, the district court's finding of non-dangerousness was clearly erroneous.

The district court improperly discounted the severity of Al-Timimi's offenses, which included sending his acolytes overseas to garner firearms and explosives training so that they could wage violent jihad against American soldiers in Afghanistan. Instead, it focused on the defendant's compliance with the conditions of his pretrial release and his minimal disciplinary record. But this approach inverts the governing legal standard and misallocates the burden of proof. Time in prison—even time without serious disciplinary infractions—is not itself clear and convincing evidence of non-dangerousness. *Cf. United States v. Dahda*, 2020 WL 4578381, at *3 (10th Cir. Aug. 10, 2020) (per curiam) (affirming denial of bail even where the defendant "served several years in prison with no significant disciplinary incidents"). The record also contains zero evidence that Al-Timimi has accepted responsibility for his misconduct or has forsworn violent jihad as a permissible tactic.

4

In addition, the district court under-weighted the recidivism challenges posed by commitment to violent jihad. *See Hassoun v. Searls*, 968 F.3d 190, 2020 WL 4355275, at *11 (2d Cir. July 30, 2020) (staying a defendant's release and underscoring that "even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation"). The district court, minimizing *Hassoun*, stated that Al-Timimi "was neither charged with nor convicted of any terrorism offenses." 2020 WL 4810120, at *3 n.3. But, here, that is a distinction without a difference. After September 11, the connection between supporting the Taliban against American soldiers and the terroristic threat posed by violent jihad was manifest. *Cf. United States v. Hamidullin*, 888 F.3d 62, 78 (4th Cir. 2018) (Wilkinson, J., concurring) (noting that the Court's rejection of combatant immunity claims by a Taliban fighter was appropriate in light of the "worldwide scourge of terrorism").

*Second*, the defendant has not demonstrated that a substantial question of law exists as to his § 844(h) convictions. A "substantial question of law" is a "close" question or "one that very well could be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam). The government accepts for argument's sake that the defendant's two § 924(c) convictions, resulting in his life sentence, raise substantial questions under *Davis*. But his two convictions under § 844(h) subject him to an additional mandatory

30-year sentence that will not run until at least 2039. Those convictions are sustainable under a straightforward application of 18 U.S.C. § 2(a), and the defendant's attack on that theory, based on *Rosemond v. United States*, 72 U.S. 65 (2014), is not persuasive.

Because the defendant did not object to the aiding-and-abetting instructions at trial, this Court would, at most, review any *Rosemond* claim for plain error. But there was no error, because the jury instructions expressly required the jury to conclude—in keeping with *Rosemond*—that the defendant understood, in advance, that others were going to carry explosives in furtherance of federal felonies. JA1336–1343. Trial evidence supported that conclusion. *See* JA81–85, 112–120, 123, 185–87, 413–14 (testimony of Yong Kwon); JA928, 932 (testimony of FBI Special Agent John Wyman); JA1296–1303 (Exhibit 10J11a—an article the defendant sent to his brother recounting one recruit's experience at the LET training camps, including his firing of a mounted grenade launcher).

Proof of advance knowledge under *Rosemond* can rest on circumstantial evidence. *United States v. Benson*, 957 F.3d 218, 238 (4th Cir. 2020). Here, a rational jury could have concluded that by directing his followers to train at the LET camps in preparation to fight Americans, Al-Timimi understood that those men would gain proficiency in LET's signature tactics—the use of automatic weapons and explosives.

What's more, absent any instructional error, the defendant makes only a sufficiency argument—and he cannot prevail by highlighting "competing evidence," as the district court concluded. 2020 WL 4810120, at *5. Rather, he must show that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Millender*, — F.3d —, 2020 WL 4745571, at *3 (4th Cir. Aug. 17, 2020). He has not done so.

Finally, the district court stated in a footnote that the government had not responded to the defendant's First Amendment arguments and his reliance on the alleged discovery violations underlying the remands. 2020 WL 4810120, at *5 n.4. The First Amendment claim is clearly without merit. *See United States v. Miselis*, — F.3d —, 2020 WL 5015072, at *10 n.9 (4th Cir. Aug. 24, 2020) (aiding and abetting criminal conduct is not protected speech); *United States v. Rahman*, 189 F.3d 88, 114 (2d Cir. 1999) (speech that "constitutes an agreement to use force against the United States" is not protected). Likewise, the district court has thus far rejected the defendant's discovery claims, so there is no reason to believe those claims are an exceptional reason for bail.

***Third***, the defendant has not demonstrated that exceptional reasons exist under 18 U.S.C. § 3145(c). The district court identified two—the pandemic and this case's unusual procedural posture. Even under a deferential standard of review, however, those reasons are not exceptional.

7

As to the pandemic, any danger from COVID-19 at the maximum-security ADX facility is currently notional. To date, no inmates or staffers have tested positive for COVID-19 at ADX Florence, while eight staff members—stationed elsewhere in the complex apart from the ADX facility—have tested positive and recovered. Likewise, the restrictive conditions of confinement at ADX Florence minimize the risk of an uncontrolled outbreak. JA1473–74 n.5, 1528. Moreover, the defendant's release plan makes him *likelier* to contract COVID-19. The defendant proposes to be released into Washington, DC, JA1430, which has identified 13,794 instances of coronavirus infection, leading to 605 deaths.[1]

In addition, the defendant's argument for exceptional reasons depends on medical conditions that are fairly common. Likewise, his claim of non-dangerousness depends on his lack of a disciplinary record while incarcerated. But if those two factors, standing alone, were sufficient to justify bail, then many of the defendant's fellow inmates in maximum-security prison should be also be released so long as they have not committed disciplinary infractions while imprisoned. That cannot be correct. *Cf. United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for

---

[1] *See* Gov't of the District of Columbia, *Coronavirus Data*, Aug. 26, 2020, https://coronavirus.dc.gov/page/coronavirus-data.

granting release to each and every prisoner within our Circuit.").

The district court's focus on the case's procedural posture is also problematic. It expressed concern that "[s]hould Al-Timimi succeed in having his convictions under Counts 7, 8, 9, and 10 reversed, he would have already served more time in prison than warranted." 2020 WL 4810120, at *7. But that is only true because of the defendant's own choices. If he had already perfected his direct appeal, and if this Court had agreed with his attacks on the government's theories of vicarious liability, he would have been a free man five years ago.[2] The Court should not countenance a strategy whereby the defendant receives early release from prison by pointing to a legal theory he has been unwilling to defend before this Court on the merits.

\* \* \*

In light of the high probability that the government will prevail on at least one of the three foregoing questions, the government has a strong likelihood of

---

[2] In denying the government's stay motion, the district court stated that this argument was "not well-taken" in light of the case's history. (Attachment 4 at 3 n.1.) As the government explained in its opening brief, ECF No. 5 at 6 n.4, "[i]n a pleading filed in November 2015, the government represented that it had provided the documents related to the second remand to the district court as early as 2007, well before the district court rejected the allegations supporting the first remand. (Dist. Ct. ECF No. 420 at 2.)." *See also* JA1600–03 (discussing these matters during the defendant's bail conference). In any event, the defendant has always been able to return to this Court to seek a merits-based adjudication of his convictions on Counts 7–10 whenever he saw fit. He has not done so.

success on appeal, or, at the very least, a "substantial case on the merits." *Hilton*, 481 U.S. at 778.

## II. The Threat of Substantial Injury to Other Parties Interested in the Proceeding

For the reasons stated above, *see supra*, the third factor—the threat of injury to other parties—is at most neutral. While it is true that the defendant is at higher risk of developing complications from COVID-19, he has not demonstrated that ADX Florence, in particular, poses such a risk, given the lack of documented cases among prisoners there. Moreover, given increased risk of infection in Washington, DC, the defendant's release plan may expose him to additional danger than he faces while incarcerated.

## III. Irreparable Injury and the Public Interest

The second and fourth factors—the possibility of irreparable injury to the government and the public interest—also weigh in favor of a stay. As the Fifth Circuit has explained, a defendant's offenses of conviction militate in favor of a stay when those crimes are particularly serious. *See Woodfox v. Cain*, 789 F.3d 565, 572 (5th Cir. 2015) ("[T]here is a substantial interest in staying the release of a person, twice convicted of murder, from being released from a life sentence without the possibility of parole."). Here, where the jury convicted the defendant of soliciting treason as part of a plot to wage war on American soldiers, the public

interest weighs in favor of a stay. That is doubly so in light of the dangers inherent in releasing defendant who has committed offenses relating to violent jihad.

## Conclusion

For the foregoing reasons, the Court should stay the defendant's release pending adjudication of this bail appeal.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____
Daniel T. Young
Gordon D. Kromberg
John T. Gibbs
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

## Certificate of Compliance

I certify that this motion was written using 14-point Times New Roman typeface and Microsoft Word 2016. I further certify that this brief does not exceed 5,200 words, as required by Federal Rule of Appellate Procedure 27(d)(2)(A), and is more specifically 2,334 words. I understand that a material misrepresentation can result in the Court's striking the response and imposing sanctions.

By:     /s/
Daniel T. Young
Assistant United States Attorney