IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-4441

UNITED STATES OF AMERICA,

*Appellant*,

v.

ALI AL-TIMIMI,

*Appellee*.

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Leonie M. Brinkema, District Judge*

MEMORANDUM REPLY BRIEF OF THE UNITED STATES
IN SUPPORT OF BAIL APPEAL

G. Zachary Terwilliger
United States Attorney

Daniel T. Young
Assistant United States Attorney

Gordon M. Kromberg
John T. Gibbs
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

**Table of Contents**

Page

Table of Authorities ................................................................................................ ii

Argument....................................................................................................................1

I. The defendant's efforts to bolster the district court's non-dangerousness finding are unavailing. ............................................................1

II. The defendant fails to explain how the government's aiding-and-abetting theory underlying his § 844(h) convictions is defective. ..................4

III. The defendant has not demonstrated exceptional circumstances under 18 U.S.C. § 3145(c). ..................................................................................8

Conclusion ................................................................................................................11

Certificate of Compliance .........................................................................................12

i

# Table of Authorities
Page
**Cases**
*Brandenburg v. Ohio*, 395 U.S. 444 (1969)..................................................................8

*Jackson v. Virginia*, 443 U.S. 307 (1979).....................................................................6

*Pinkerton v. United States*, 328 U.S. 640 (1946).........................................................5

*Rosemond v. United States*, 572 U.S. 65 (2014).........................................................6

*United States v. Al-Timimi*, No. 1:04-cr-385 (LMB),
    2020 WL 4810120 (E.D. Va. 2018) ........................................................................6

*United States v. Blackman*, 746 F.3d 137 (4th Cir. 2014) .........................................5

*United States v. Davis*, 139 S. Ct. 2319 (2019) ........................................................10

*United States v. Millender*, — F.3d —, No. 18-4784,
    2020 WL 4745571 (4th Cir. Aug. 17, 2020) ......................................................3, 6

*United States v. Miselis*, — F.3d —, No. 19-4550,
    2020 WL 5015072 (4th Cir. Aug. 24, 2020) ..........................................................7

*United States v. Savage*, 885 F.3d 212 (4th Cir. 2018) ..............................................3

*United States v. Spinney*, 65 F.3d 231 (1st Cir. 1995)................................................7

**Statutes**

18 U.S.C. § 2(a) ............................................................................................................5

18 U.S.C. § 3143(a)(2)(A)(i) ........................................................................................2

18 U.S.C. § 3143(b)(1)(B)(iii) ......................................................................................4

18 U.S.C. § 3145(c) ......................................................................................................9

18 U.S.C. § 844(h) ....................................................................................................6, 9

18 U.S.C. § 924(c) ................................................................................................. 9, 10

28 U.S.C. § 2555(f)(4) ................................................................................................10

**Rules**

Fed. R. Crim. P. 46(c) ..................................................................................................1

**Argument**

In seeking to sustain the district court's bail order, the defendant raises arguments that are inapposite to the government's claims and seeks to re-litigate the strength of the government's trial evidence in ways that are irrelevant to the legal issues before the Court. For the reasons appearing below, the Court should reject the defendant's arguments and vacate the district court's bail order.

**I.      The defendant's efforts to bolster the district court's non-dangerousness finding are unavailing.**

The defendant's arguments in support of the district court's finding of non-dangerousness are not persuasive.

First, the defendant points to the history of the case, including that the government consented to his release on bond pre-trial (JA5) and that the district court denied the government's motion to detain the defendant in advance of sentencing (JA14). But of course, once the jury returned its guilty verdicts, the burden of proving non-dangerousness by clear and convincing evidence shifted to the defendant. *See* Fed. R. Crim. P. 46(c). And at that point, the defendant stood convicted of soliciting treason and attempting to support the Taliban, which necessarily altered the calculus.

In assessing non-dangerousness, the defendant (and the district court) focus on compliance with pretrial conditions without making accommodation for the seriousness of these underlying offenses. But that cannot be correct. A serial

1

bomber, or a mafia kingpin, or a cartel leader, does not become non-dangerous simply by virtue of having complied with pretrial conditions. The same is true here, where the defendant's conduct involved soliciting treason in an attempt to support the Taliban against American soldiers.

Moreover, insofar as the defendant relies on this case's prior history, it is worth pointing out that, in light of the defendant's conviction for an offense punishable by life imprisonment, the district court could only permit the defendant to remain on bond pending sentencing if it found that there was "a substantial likelihood that a motion for acquittal or new trial will be granted." 18 U.S.C. § 3143(a)(2)(A)(i). Yet, after permitting the defendant to remain on bond, the district court rejected all of his post-trial motions. *See* JA15–16. That history indicates that defendant's arguments about the strength of the government's trial evidence are not as strong as he suggests.

That leads to the second point: in order to argue that he is not dangerous, the defendant at various points scours the trial record to argue that few witnesses tied him directly to seditious conduct. Def. Br. 12 (emphasizing the district court's understanding of the trial evidence in making its dangerousness finding); *id.* at 19–21 (summarizing witnesses' trial testimony). This type of argument is simply irrelevant. This Court has explained that the "'[u]ncorroborated testimony of an accomplice may be sufficient to sustain a conviction,' and 'on appeal, we are not

entitled to assess witness credibility, and we assume that the jury resolved any conflicting evidence in the prosecution's favor.'" *United States v. Millender*, — F.3d —, No. 18-4784, 2020 WL 4745571, at *4 (4th Cir. Aug. 17, 2020) (quoting *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018)). And here, in relation to the meeting on September 16, Yong Kwon testified:

> Q. What did [Al-Timimi] say about the permissibility of killing American troops in Afghanistan?
>
> A. The only thing I can recall is when he said, "Join the mujahideen," he said that it doesn't matter if we fight the Indians or the Russians or the Americans, that this is all legitimate jihad.

JA177. Kwon also testified that Al-Timimi said during the September 16 meeting that those present "should join LET and get some training from the LET camps." JA185–87. And even after the September 16 meeting, Kwon explained that Al-Timimi advised him how to maintain a cover story so that he could enter Pakistan undetected. JA211–12. Thus, as the case comes to this Court, the record conclusively establishes that Al-Timimi organized his acolytes to travel overseas in order to gain the skills necessary to fight and kill American soldiers. The gravity of that offense conduct—and the obvious dangers it created—is not vitiated by mere compliance with pretrial conditions of supervision.

Finally, the government stated in its opening brief that "[t]he record … contains zero evidence that Al-Timimi has accepted responsibility for his misconduct or has forsworn violent jihad as a permissible tactic." Gov't Br. 12.

3

Remarkably, the defendant does not contest that assertion *in any way*. Thus, the defendant appears now to maintain the same beliefs underlying his offense conduct—*i.e.*, that waging violent jihad is "fard ayn," or "obligatory on all Muslims." JA181–84, 1137–38. Neither the defendant's response brief nor the district court's bail opinion explain how a finding of non-dangerousness is compatible with such a record, particularly given that the defendant bears the burden of proof.

II. **The defendant fails to explain how the government's aiding-and-abetting theory underlying his § 844(h) convictions is defective.**

The defendant's two convictions on Counts 9–10 carry an additional consecutive sentence of 30 years. To obtain bail, the defendant must show that the validity of those convictions raises a substantial question of law or fact likely to result in a non-incarceration sentence, as required by 18 U.S.C. § 3143(b)(1)(B)(iii). To do so, the defendant injects collateral arguments and otherwise fails to grapple with the government's defense of those convictions on a straightforward aiding-and-abetting theory.

The convictions on Counts 7, 8, 9, and 10 all rest on principles of vicarious liability, since they arise from the conduct of Yong Kwon and Khwaja Hasan in handling firearms and explosives in the LET camps. In the district court, the government articulated two, wholly independent theories of vicarious liability. In summary:

4

**The Government's Alternative Theories of
<u>Vicarious Liability as to Counts 7–10</u>**

| **Theory 1 (Co-Conspirator Liability)** |
|---|
| • The defendant induced conspiracies to commit firearms offenses (Count 1), to commit sedition (Count 2), and to violate the Neutrality Act (Count 6).<br>• In furtherance of those conspiracies, Kwon and Hasan used firearms and explosives at the LET camps.<br>• That conduct was reasonably foreseeable to Al-Timimi.<br>• If Al-Timimi were a member of the induced conspiracies, he would be liable as a co-conspirator under *Pinkerton v. United States*, 328 U.S. 640 (1946).<br>• Under 18 U.S.C. § 2(a), a defendant who induces a criminal offense is liable as a principal.<br>• Therefore, because Al-Timimi induced the conspiracies, he is subject to *Pinkerton* liability for the actions of Kwon and Hasan. |
| **Theory 2 (Aiding and Abetting Liability)** |
| • Al-Timimi "aid[ed], abet[ted], counsel[ed], command[ed], induce[d] or procure[d]" Kwon's and Hasan's handling of firearms and explosives at the LET camps.<br>• Under 18 U.S.C. § 2(a), Al-Timimi is therefore punishable as a principal. |

To be clear, the government believes that *both* of these theories are valid and provide *independent* bases to sustain the defendant's convictions on Counts 9–10. *Cf. United States v. Blackman*, 746 F.3d 137, 141 (4th Cir. 2014) ("Because we find Blackman's conviction appropriate under *Pinkerton*, we need not address aiding and abetting liability as an alternate basis of conviction."). Should Al-Timimi ever perfect his direct appeal, the government will defend the judgment on both bases before this Court. But in its opening brief, the government *only* raised the second, more straightforward theory of aiding-and-abetting liability. Instead of

5

focusing on that theory, the defendant confuses matters by attacking the government's *Pinkerton* theory (which is not at issue in this appeal).

To return to the simple framework appearing in the government's opening brief: because the defendant's § 844(h) convictions are sustainable on an aiding-and-abetting theory, the defendant has not shown that a substantial question of law exists that will result in a non-incarceration sentence on appeal. That is because the district court's jury instructions complied with *Rosemond v. United States*, 572 U.S. 65 (2014), by requiring the jury to find that the defendant had advance knowledge that Kwon and Hasan would use firearms and explosives at the LET camps. JA1336–1343. There is therefore no viable claim of instructional error on appeal. And insofar as the district court concluded that a substantial question of law exists because the defendant "highlight[ed] competing evidence ... regarding [his] knowledge of the use of explosives at the LET camp," *United States v. Al-Timimi*, No. 1:04-cr-385 (LMB), 2020 WL 4810120, at *5 (E.D. Va. 2018), it committed legal error. To prevail on that kind of claim—which is just a sufficiency argument wearing *Rosemond* clothing—the defendant must show that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Millender*, 2020 WL 4745571, at *3 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). He has not done so.

Instead, the defendant cites various portions of the trial record to support the

assertion that he never expressly told any of his disciples to handle weapons and explosives at the camps. That argument does not get the defendant to his desired destination. Additional evidence indicates that that the defendant was entirely aware of LET's tactics, including its use of explosives. JA948–49, 1296–1303. Moreover, in the context of this case—in which Al-Timimi told those assembled on September 16 that violent jihad in Afghanistan was mandatory and expressly told them to train at the LET camps—the defendant's argument makes little sense. To step outside the present context, Al-Timimi's argument is akin to someone organizing a bank robbery, directing the would-be robbers to train with firearms at a local shooting range in preparation for the crime, and then, when convicted on a theory of aiding and abetting the use of guns at the shooting range, arguing that he could not possibly have known to a "practical certainty," *United States v. Spinney*, 65 F.3d 231, 237 (1st Cir. 1995), that the people whom he directed to train for the robbery would handle any particular gun. The argument is without merit.

The defendant also continues to rely on his First Amendment arguments, which contravene this Court's recent decision in *United States v. Miselis*, — F.3d —, No. 19-4550, 2020 WL 5015072 (4th Cir. Aug. 24, 2020). The defendant did not "promote," "encourage," or "urge" his followers to engage in jihad in the abstract, which might have some constitutional protection depending on the context. *See id.* at *12. Instead, he directed them to obtain training at

7

specified camps in a particular place (Pakistan) run by a particular organization (LET) in support of a particular objective (fighting American soldiers alongside the Taliban) at a particular time (shortly after September 11, 2001). This conduct is akin to "organizing" or "inciting" sedition, which is not constitutionally protected. *See id.* (explaining that organizing a riot "comes much closer to 'preparing a group for violent action' than merely 'teaching ... the moral propriety' of violence in the abstract" (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969)) and is akin to aiding and abetting criminal conduct, which "doesn't qualify for First Amendment protection"). And if there were any doubt about the defendant's culpability, it is important to underscore that, even after September 16, he advised Yong Kwon on how to avoid detection in order to successfully enter Pakistan. JA211–12. The defendant's First Amendment claim is meritless.

Finally, in the absence of *any* statement from the district court that the defendant's years-long quest to unearth a discovery violation here has any merit, those claims also do not provide a "substantial question" sufficient to satisfy § 3143.

Because the defendant has not demonstrated a substantial question likely to result in his release on appeal, the Court should vacate the bail order.

### III. The defendant has not demonstrated exceptional circumstances under 18 U.S.C. § 3145(c).

The defendant makes three arguments in support of the district court's

exceptional-reasons finding under 18 U.S.C. § 3145(c), all of which are problematic.

*First*, he cites a number of district courts which have granted bail under § 3145(c) in light of the pandemic. But the government *agreed* in its opening brief that, in certain circumstances, the pandemic might provide an "exceptional reason." The government's narrower argument was that the defendant is likelier to contract COVID-19 while on bail than while subject to the restrictive conditions of confinement at ADX Florence. The defendant does not address that argument at all. The government also asserted that the defendant's exceptional-reasons claim here lacks any limiting principle because, when coupled with his (and the district court's) dangerousness framework, it suggests that even defendants in maximum-security prison can be released in light of medical conditions like hypertension and obesity that are fairly common. The defendant does not offer any responsive limiting principle in his brief.

*Second*, the defendant argues that the procedural posture of this case counsels in favor of bail, underscoring that he "has multiple motions pending with the district court and cannot reasonably be expected to abandon arguments on legal questions that were expressly countenanced by remand orders of this Court." Def. Br. 27. Of course, that is correct. But if the defendant wished to timely vindicate his attacks on his § 924(c) and § 844(h) convictions, he was entirely capable of

9

doing so before this Court under the rubric of plain-error review. And, even though his years-long quest to unearth a discovery violation has thus far proven fruitless, the defendant can always collaterally challenge his convictions based on newly discovered evidence under 28 U.S.C. § 2555(f)(4). The government's point is not that the defendant should pull his punches. Rather, in this extremely unusual procedural posture, it is that the Court should decline to permit the defendant to avoid having to vindicate his arguments on the merits so that he can obtain early release under deferential bail standards. And, insofar as principles of equity bear on the question at all, as the district court suggested (JA1591–92), the defendant has never sought to accelerate adjudication of his case. Moreover, there is nothing inequitable about the defendant—who used his position of religious authority to solicit treason that, if successful, would have resulted in the deaths of American soldiers—spending longer in prison than his followers.

*Third*, the defendant emphasizes that an "exceptional reasons" finding is only necessary in light of his convictions under § 924(c), which the district might vacate under *United States v. Davis*, 139 S. Ct. 2319 (2019). The government agrees—which is precisely why it has also challenged the district court's erroneous dangerousness finding and substantial-question holdings on appeal.

## Conclusion

For the foregoing reasons, the Court should vacate the order granting the defendant bail pending appeal.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

_____/s/_____
Daniel T. Young
Gordon M. Kromberg
John T. Gibbs
Assistant United States Attorneys

## Certificate of Compliance

I certify that this memorandum reply brief was written using 14-point Times New Roman typeface and Microsoft Word 2016. I further certify that this brief does not exceed 2,600 words, as required by Federal Rule of Appellate Procedure 27(d)(2)(A), and is more specifically 2,406 words. I understand that a material misrepresentation can result in the Court's striking the response and imposing sanctions.

                                              /s/
                                     Daniel T. Young
                                     Assistant United States Attorney
                                     Eastern District of Virginia
                                     2100 Jamieson Avenue
                                     Alexandria, Virginia 22314
                                     (703) 299-3700
                                     daniel.young@usdoj.gov